Jane DOE, Appellant,

v.

**BOARD OF EDUCATION OF FALLS-BURGH CENTRAL SCHOOL DISTRICT, Fallsburgh Central School District, Appellees.**

Docket No. 02–9245.

United States Court of Appeals,
Second Circuit.

May 15, 2003.

Simeon Goldman, Disability Advocates, Inc., (Kathleen Courtney, on the brief), Albany, NY, for Appellant, of counsel.

Mark C. Rushfield, Shaw & Peterson, LLP, Highland, NY, for Appellee.

Present: OAKES, WINTER, and KATZMANN, Circuit Judges.

### SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, AD-JUDGED, AND DECREED that the

judgment of the district court be and it hereby is **AFFIRMED.**

Plaintiff–Appellant appeals a memorandum and order of the district court dated September 17, 2002, denying plaintiff's motion for summary judgment, granting defendants' cross-motion for summary judgment, and dismissing her complaint. For the reasons that follow, we affirm the decision of the district court.

Plaintiff–Appellant "Jane Doe" is a woman in her early thirties with a *cum laude* undergraduate degree from Wellesley College, a Master's degree in English from the State University of New York at Albany, and a history of suffering from bipolar syndrome.[1] As her academic achievements suggest, she has consistently been able to perform well despite her disorder, in part thanks to medication and therapy. After working in various other capacities, she decided to change careers and become a teacher. In September 2000 she began work as a probationary eighth-grade English teacher for Appellee–Defendant Board of Education of Fallsburg Central School District ("the Board"). The Board is the governing body for Appellee–Defendant Fallsburgh Central School District ("the District"), a public school district in Sullivan County, New York.

On November 6, 2000, Doe called the chair of the Fallsburgh Junior High School English Department and told her that she was depressed and suicidal and would not be coming to work the next day. The following morning, November 7, she checked herself into a local mental health treatment facility. Later that day she called Gary Holbert, the District superintendent, and told him that she had been admitted to a psychiatric hospital and would be absent from work. She called Holbert again on or around November 15 and told him that she would be discharged

on the 17th, and would be able to return to work in January of 2001.

After Doe entered the hospital, the District obtained Doe's grade book, and discovered that the grades were erratically recorded and that they seemed to diverge unpredictably over time, leading the District to question their accuracy. Around this time, in November of 2000, Holbert decided to recommend that Doe's contract not be renewed at the end of her probationary period. On January 9, 2001, Doe was readmitted to the hospital; she was discharged on January 17, 2001. In February 2001, pursuant to the District's usual practice, the school's principal made recommendations to Superintendent Holbert about whether to recommend that various probationary teachers be reappointed. He recommended that Doe not be reappointed in a memo dated February 28, 2001. The Board officially decided on March 14 not to renew Doe's probationary appointment, and voted to terminate her effective June 30, 2001. Holbert's official explanation for his recommendation was that her "instruction was not found to be at an excellent level and there were gaps in the curriculum and the evaluation of students." When Doe offered to finish the year, Holbert requested, pursuant to the collective bargaining agreement that governed teachers employed by the District, that Doe agree to a psychiatric examination. Doe refused the examination, and was not allowed to return to work.

Doe filed suit in the Southern District of New York (Brieant, *J.*) in October of 2001, alleging that the Board and the District violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.,* the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the New York Human Rights Law, N.Y. Exec. Law § 296 ("NYHRL"), when it decided not to renew her appointment. At the close of discovery, both par-

---

1. "Jane Doe" is of course a pseudonym.

ties moved for summary judgment. They both relied on an extensive joint statement of stipulated facts. In a memorandum and order dated September 17, 2002, the district court denied Doe's motion, granted defendants' motion, and dismissed the complaint.

This Court reviews a district court's grant of summary judgment *de novo*. *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 367–68 (2d Cir.2003).

Claims under the ADA, the Rehabilitation Act, and the NYHRL all proceed under the familiar burden-shifting analysis articulated by *McDonell Douglas* and its progeny. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Parker v. Columbia Pictures Indust.*, 204 F.3d 326, 332 n. 1 (2d Cir.2000) (applying general Title VII principles to NYHRL cases); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir.1998) (applying *McDonnell Douglas* process to ADA claims); *Teahan v. Metro–North Commuter R. Co.*, 951 F.2d 511, 514 (2d Cir.1991) (applying burden-shifting in cases where employer claims not to have relied on employee's disability).

Doe therefore had the burden of establishing a prima facie case. In order to establish a prima facie case pursuant to the ADA, a plaintiff must show that "(1) [her] employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) [she] was qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [she] suffered adverse employment action because of [her] disability." *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir.2001). Claims under the Rehabilitation Act are treated almost identically to those under the ADA. *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middle-*

*town*, 294 F.3d 35, 48–49 (2d Cir.2002) ("RECAP") (noting that the prima facie case for ADA and Rehabilitation Act is the same, except that Rehabilitation Act does not permit mixed-motive suits). Accordingly, we simply use "ADA" to indicate both statutes.

■ In the present case, there is no dispute that the District is a covered institution, that Doe could perform the requirements of the job, or that Doe suffered an adverse employment action. The district court found that Doe was not disabled as defined in the ADA, and thus could not establish a prima facie case.

A plaintiff can demonstrate that she has a disability within the meaning of the ADA in any of three ways. She can show that she: (1) has an impairment that substantially limits one or more of her major life activities; (2) has a record of such an impairment; or (3) that the employer regarded her as having such an impairment. *Francis v. City of Meriden*, 129 F.3d 281, 283 (2d Cir.1997) (citing 42 U.S.C. § 12102(2)). Doe asserted all three grounds below, but the district court rejected each claim. On appeal, she only raises the third, claiming that there is a question of material fact as to whether the District regarded her as disabled.

To prevail on a "regarded as" claim, a plaintiff must show that her employer regarded her as having an impairment that, if she really had it, would fit under one of the first two prongs of the statute. *Francis*, 129 F.3d at 285. In other words, as this Court explained in *Colwell v. Suffolk County Police Department*, 158 F.3d 635 (2d Cir.1998):

It is not enough, however, that the employer regarded [the plaintiff] as somehow disabled; rather, the plaintiff must show that the employer regarded [her] as disabled *within the meaning of the ADA*. Thus, in order to prevail, the plaintiff [was] required to adduce evi-

dence that the [employer] regarded [her] as having an impairment that substantially limited a major life activity. *Id.* at 646 (citation omitted). Doe must show that the District regarded her not merely as unable to work in her specific job, but disabled from a "broad range of jobs" as compared with "the average person having comparable training, skills, and abilities." *Bartlett v. N.Y. State Bd. of Law Exam'rs,* 226 F.3d 69, 82–83 (2d Cir. 2000).

In the proceedings below, both sides asserted in their Local Rule 56.1 Statements of Undisputed Material fact that Holbert decided to recommend that Doe not be reappointed in November of 2000. *See* Plaintiff's Rule 56.1 Statement ¶ 20; Defendant's Rule 56.1 Statement ¶ 22; *see also* Brief for Plaintiff–Appellant Jane Doe, at 4 ("Less than two weeks after Doe entered the hospital, [ ] Holbert decided to recommend to the Board that Doe be terminated."). Accordingly, only the information available to him at the time the decision was made can be taken into account in determining whether he regarded Doe as disabled within the meaning of the ADA. *See Bartlett,* 226 F.3d at 85–86; *Heilweil v. Mt. Sinai Hosp.,* 32 F.3d 718, 725 (2d Cir.1994) (explaining, in a Rehabilitation Act context, that "an employer is only responsible for employment decisions based on information available to it when it decides").

Here, it is undisputed that no one connected with the District, including Holbert, knew anything about Doe's bipolar disorder at the time the decision was made. The only evidence Doe proffers to establish that Holbert regarded her as disabled at the time he made the decision is the fact that she had told him she was in a psychiatric hospital. *See* Joint Stipulation of Agreed Facts ¶¶ 91, 93. Under the precedents we are constrained to follow, we conclude that this fact alone is insufficient.

Doe argues that the court should take into consideration Holbert's comments about why he asked her, in March of 2001, to submit to a psychiatric examination before she could return to work that April. Even if this Court could consider this evidence, which does not pertain to the November decision, Holbert's admitted concerns about whether Doe was able to return to work do not address his perception of her ability to perform a broader range of jobs, the inquiry required by *Giordano.* This Court's decision in *Colwell* held that the fact that the defendant police department required only the plaintiff officers to undergo a physical examination as a condition of promotion did not support an inference that the department regarded them as disabled. 158 F.3d at 647; *see also Sullivan v. River Valley School Dist.,* 197 F.3d 804, 808–09 (6th Cir.1999) ("[A] defendant employer's perception that health problems are adversely affecting an employee's job performance is not tantamount to regarding that employee as disabled."); *Cody v. CIGNA Healthcare of St. Louis, Inc.,* 139 F.3d 595, 599 (8th Cir.1998) ("A request for an evaluation is not equivalent to treatment of the employee as though she were substantially impaired. Employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims . . . .") (citations omitted).

 In the alternative, even if we believed that Doe could establish a prima facie case, the district has proffered substantial evidence of a legitimate non-discriminatory reason for her termination. Plaintiff's evidence that these reasons are mere pretexts for discrimination is the allegations regarding Holbert's testimony about the psychiatric evaluation, plus a few inconsistencies in the District's explanation of its reasons. Evidence that could permit

a jury to believe that the defendant's proffered reasons are not believable can support an inference that they are pretexts for discrimination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (holding, in post-trial situation, that factfinder may conclude from the falsity of the employer's explanation that discrimination was intended, depending upon the factual context). We do not believe that the evidence here is sufficient to permit such an inference, however.

We have considered all of appellant's arguments, and find them to be without merit. The judgment of the district court is **AFFIRMED**.